**In the Matter of Richard Francis SCHMIDT, Bankrupt.**

**In the Matter of Floyd Donald SCHMIDT, Bankrupt.**

**In the Matter of Floyd Donald SCHMIDT, Richard F. Schmidt, Robert T. Schmidt, d/b/a Smitty's Restaurant, a partnership, Bankrupt.**

Nos. 55–B–930, 55–B–915, 55–B–1034.

United States District Court
E. D. Wisconsin.

Nov. 8, 1962.

John V. Whaley, Racine, Wis., for Clarence M. Surendonk.

Ben Schwartz, Racine, Wis., for Richard Tarwid.

Robert P. Goodman, Racine, Wis., for Trustee Henry Dorman.

Henry Dorman, Racine, Wis., Trustee.

Leo Vaudreuil, Kenosha, Wis., for L. C. Christensen.

Richard G. Harvey, Jr., Racine, Wis., for Mike Zold.

GRUBB, District Judge.

These cases are before the court on petitions for review of an order of the Referee in Bankruptcy dated March 24, 1961. The order in issue, entered in accordance with the referee's decision, general and special findings of fact and conclusions of law dated February 1, 1961, determined the validity of certain liens and the rights of the lien claimants as against funds in the hands of the trustee.

Petitioners for review, identified further below, are L. C. Christensen and Clarence Surendonk. Mike Zold has filed an answer to the Christensen petition and a cross-petition for review.

In the summer of 1954, Robert T. Schmidt, Floyd Donald Schmidt, and Richard F. Schmidt, who were doing business as a partnership known as Smitty's Restaurant, entered into negotiations with L. C. Christensen, an investment broker, with respect to the purchase of the property at 1216 Douglas Avenue, Racine, Wisconsin, and the financing of the building and equipment of a restaurant at that site which was across the street from the restaurant they were then operating.

In August 1954, the Schmidts paid Christensen $500 to be used in the purchase of the property. Christensen purchased the 1216 Douglas Avenue site for $7,500 on September 7, 1954. He obtained title to the property by duly recorded warranty deed which named L. C. Christensen as grantee.

The Schmidts, acting principally through Robert T. Schmidt, began negotiations with various contractors and suppliers for the construction and equipment of the proposed restaurant. In early October 1954, the first work was performed on the site in moving the building then located on the front portion of the lot to the rear thereof and in

108

digging the foundation for the new restaurant which was to be attached to the front of the old building. The construction and equipment work for the building progressed until virtual completion in early February of 1955 when the Schmidts began operation of the restaurant at the 1216 Douglas Avenue site. They continued said operation until the commencement of the instant bankruptcy proceedings.

Pursuant to order of the bankruptcy court, the premises at 1216 Douglas Avenue were sold at public auction, free and clear of all liens and encumbrances thereon, with such liens and encumbrances to attach to the proceeds or, in the alternative, free and clear of encumbrances but subject to contractual rights of L. C. Christensen. The proceeds on sale amounted to $28,000 for the real estate and $18,000 for the restaurant personal property.

Thereafter the bankruptcy court ordered the various claimants to the proceeds to establish the priority and validity of their liens or other interest. Claimants in the proceedings were the United States of America, which has filed tax liens against the partnership; the Wisconsin Industrial Commission, which has a lien based on a judgment obtained against the partnership; the F. W. Boelter Company, a conditional sales contract vendor; L. C. Christensen, as record title owner of the real estate and whatever other contractual rights he may have to the proceeds; and certain contractors' lien claimants who had furnished labor or materials in the construction of the building at 1216 Douglas Avenue, whose claims are as follows: *

Mike Zold, a plumber, furnished material and labor beginning October 15, 1954, and ending March 28, 1955. Zold filed a contractor's claim for lien against Robert T. Schmidt and L. C. Christensen on July 22, 1955, in the amount of $6,595.64. There was an error in the claim for

lien, and the amount due Zold is $6,102.69.

Richard Tarwid, a mason contractor, furnished brick and masonry services beginning November 6, 1954, and ending December 30, 1954. His claim for lien was filed against Robert T. Schmidt and L. C. Christensen on January 14, 1955, in the amount of $6,388. Tarwid received a $3,000 partial payment on this account.

David J. Lonergan, d/b/a Keystone Heating & Sheet Metal Works, performed work beginning December 3, 1954, and ending March 9, 1955. His claim for lien was filed against Robert T. Schmidt and L. C. Christensen on April 25, 1955, in the amount of $3,795.29.

Durand Avenue Lumber Company, successor to James Lumber Company, performed services beginning October 13, 1954, and ending February 28, 1955. Its claim for lien was filed against L. C. Christensen and Robert T. Schmidt on March 1, 1955, in the amount of $2,530.91.

Lloyd D. Anderson, a plastering contractor, performed services beginning February 14, 1955, and ending March 2, 1955. His claim for lien was filed against Richard Schmidt, Robert Schmidt, and Floyd Schmidt, d/b/a Smitty's Restaurant, on April 28, 1955, in the amount of $1,789.25.

Wisconsin Mosaic & Tile Co. furnished labor and materials from December 27, 1954 to January 13, 1955. It filed its claim for lien against Robert T. Schmidt and L. C. Christensen on March 12, 1955, in the amount of $1,779.

Clarence Surendonk, an electrical contractor, performed work from October 15, 1954 to April 4, 1955. His claim for lien was filed against Robert Schmidt and L. C. Christen-

* Immaterial discrepancies in the statistics are the result of differences between testimony and the declarations of the claims for liens.

sen on August 24, 1955, in the amount of $3,936.62.

The referee found it unnecessary to determine the extent of priority of the claims of the United States and the Wisconsin Industrial Commission against the partnership, since these claims were far exceeded by the remaining claims and would be postponed to the payment of administration expenses in accordance with the provisions of § 67, sub. c of the Bankruptcy Act, § 107, sub. c of Title 11 U.S.C.A. Further, the referee refrained from determining the validity of the conditional sales contract vendor's lien of the F. W. Boelter Company, or the priority of lien as between the F. W. Boelter Company and L. C. Christensen as to the proceeds of the sale of the personal property.

The referee defined the interest of L. C. Christensen in the real estate as that of legal title holder and land contract vendor. This interest made Christensen an "owner" of land under the contractors' lien statute, § 289.01(1) (c), and said interest would be subject to contractors' lien claims meeting the requirements of subsection (4) of § 289.01.

In respect to the contractors' liens listed above, the referee determined that the liens of Zold, Lonergan, Tarwid, and Durand Avenue Lumber Company were valid and prior to the interest of Christensen in the proceeds of the sale of the real estate, because Christensen either expressly promised the contractors to pay for their services or because he had such contracts with them that he was estopped from denying the promise. As to the liens of the Wisconsin Mosaic & Tile Co., Anderson, and Surendonk, the referee determined that there was no basis for priority as valid contractors' liens.

On petition for review, Christensen contends that the referee erred in fact and in law in upholding the validity and priority of the Zold, Lonergan, Tarwid, and Durand Avenue Lumber Company liens. Clarence Surendonk appeals from that part of the order denying the validity of his lien claim as contrary to the evidence and the law. Mike Zold answered the Christensen petition, denying its allegations, and cross-petitioned for award of interest on his claim from December 31, 1954, to date of payment.

There is no dispute as to the basic facts as found by the referee in this case insofar as these facts are material on review. The challenge on the petitions goes to inferences and conclusions drawn by the referee, in some instances listed under his findings of fact. The sole issue tried by the referee and presented to this court concerns the validity and priority of the contractors' liens as statutory liens in accordance with Wisconsin law. The question of other legal or equitable rights the contractors may have against Christensen as owner of the premises upon which they performed services was not before the bankruptcy court.

The pertinent provisions of the Wisconsin statute governing contractors' rights are as follows:

"289.01 *Contractors' liens*

"(1) *Definition.* In this chapter unless the context or subject matter otherwise requires:

"(a) 'Contractor' means a person, other than a laborer, who enters into a contract with the owner of land to improve it * * *.

* * * * * *

"(c) 'Owner' means the owner of any interest in land who enters into a contract for the improvement thereof.

* * * * * *

"(4) *Express agreement of owner.* This section does not give a lien upon the interest of any owner in land unless there is an express agreement between him and the contractor whereby such owner agrees to pay for or become responsible for the payment of the improvement."

No issue has been raised as to the procedural regularity of any of the claims for liens, the amounts thereof,

and as to the status of each lien claimant as a "contractor" under the statute.

Subsection (4) of § 289.01, quoted above, was added in its present form by revision of the statute in 1935. This provision has been a part of the law since 1899. Prior to 1935, the express agreement provision was restricted in its application to owners not in possession where the performance of the work was rendered at the request of holders of the premises under contract of lease, demise, or contract of sale. The 1935 revision makes clear that henceforth the interest of no owner would be chargeable with a contractor's lien merely on the basis of the owner's knowledge and consent to the performance of the work.

In accordance with the lien statute and the case law, the interest in realty of any owner, including an owner by virtue of holding record title or as land contract vendor, is subject to a lien where the owner expressly agreed with the contractor that he would pay for his services or that said owner would become responsible for the payment of the improvement. Delap v. Parcell, 230 Wis. 152, 283 N.W. 305 (1939); Fraser Lumber & Manufacturing Co. v. Laeyendecker, 243 Wis. 25, 9 N.W.2d 97 (1943).

■ The statutory lien based on the express agreement of the owner extends only to payment for materials and labor furnished subsequent to the making of the agreement, although the benefit conferred by work performed prior thereto may serve as consideration to support an actionable promise to pay therefor. Fraser Lumber & Manufacturing Co. v. Laeyendecker, supra, at 28 and 29, 9 N.W.2d 97.

Grounds advanced by the lien claimants for charging the interest of an owner who has not expressly promised the contractor that he would pay for or become responsible for the payment of the improvements are the doctrines of unjust enrichment, estoppel in pais, and agency.

■ The doctrine of unjust enrichment does not appear to be available to secure the enforcement of statutory liens. Cases cited to support its application were actions for damages and not for enforcement of statutory liens. See Nelson v. Preston, 262 Wis. 547, 55 N.W. 2d 918 (1952), and Kelley Lumber Co. v. Woelfel, 1 Wis.2d 390, 83 N.W.2d 872 (1957). Also see Greenquist, The Doctrine of Unjust Enrichment As it Affects Mechanic's Lien Foreclosures, 34 Wis. Bar Bull. 39 (1961).

Principles of estoppel in pais were applied in Milwaukee Structural Steel Company v. Borun, 164 Wis. 502, 159 N.W. 811, 162 N.W. 424 (1917), to confer priority on contractors' liens over the interests of the vendor-mortgagee owner. At the time this case was decided, the interest of a vendor-owner could not be charged with a contractor's lien unless said owner expressly promised the contractor that he would pay for or become responsible for the payment for the improvement under § 3314 Wis.Stats. (1915).

■ In the absence of an express agreement by the owner of real estate, the interest of said owner may nevertheless be chargeable with a contractor's lien under principles of the law of agency in that the promise of the agent to the contractor may be binding upon his principal.

In Bourdo v. Preston, 259 Wis. 97, 47 N.W.2d 439 (1951), the trial court found that an owner and her son and a family corporation entered into a joint venture or partnership for the purpose of improving and selling parcels of the owner's land. The owner invested her real estate in the enterprise and entered into certain financing arrangements therefor. The son and the corporation contracted for labor and materials, and the son, personally and as agent for the corporation, agreed to pay for and become responsible for the payment of improvements contracted for. The trial court further found that the owner knew or ought to have known that the contractor relied upon the apparent agency of the son. The owner accepted the benefits of the improvements, knowing that the con-

tracts were in fact entered into with the contractor and that the contractor was furnishing work and materials for the premises. On the basis of these findings, the supreme court held that the owner as undisclosed or partially disclosed principal was bound by the express agreements entered into by the son and that the owner's interest in the land was subject to the contractor's lien.

Based on the above-stated rules of law and on the facts as found by the referee, it is the conclusion of the court that the liens in issue on the petitions for review are valid and prior to the interest of L. C. Christensen against the proceeds of the sale of real estate of the premises at 1216 Douglas Avenue. This conclusion of the court is not based on the determination of express promises by Christensen personally or on estoppel but on enforcement of the liens on the basis of principles of agency. To that end the court rejects the referee's finding of fact number 17 insofar as it is there found that the lien claimants have failed to establish sufficient facts to meet the burden of proof to create an agency on any basis.

The relationship between L. C. Christensen and the Schmidts in respect to the acquiring of the 1216 Douglas Avenue site and the construction and equipment of a restaurant at that site must be deemed to be that of joint venture or of principal and agent.

From the inception of the enterprise in the summer of 1954 until December 16, 1954, when the new building was under roof, the parties operated under a verbal agreement whereunder Christensen agreed to loan the Schmidts the sum of $42,000 to purchase the land and to finance the construction of the building. Payments for the improvements were to be made on completion of various portions as statements for work approved by the Schmidts were presented to Christensen.

During this period Christensen took an active part in the enterprise. He inspected the premises to be purchased and went over the plans and sketches which the Schmidts had prepared. Christensen took record title to the premises and individually contracted and paid for the moving of the existing building and excavation for the new restaurant building to be constructed, and also paid for certain insurance charges to the L. C. Christensen Agency, such payments being made without approval of the Schmidts, although they were charged to their account. Christensen also participated in price negotiations with at least one contractor before commencement of his work.

On December 16, 1954, Christensen, as the party of the first part, and the Schmidts and their wives, as the parties of the second part, entered into an agreement entitled "Option and Agreement." Pursuant to the terms of this agreement, Christensen agreed to give the Schmidts an option to purchase the 1216 Douglas Avenue premises together with all equipment fastened to the building or separate. All of the equipment was to remain the property of Christensen until fully paid for in the amount of $42,000, payable in stated installments, or until said amount was reduced to a sum that could be obtained by either party by giving mortgages. It is stated that it is fully understood and agreed that the contract relates to a loan by Christensen and not to a sale of real estate.

As collateral to the agreement and option, the Schmidts were to give a quitclaim deed to certain property, chattel mortgages on restaurant equipment owned by them and on three automobiles, and assignment of all life insurance policies.

The agreement further provided for a forfeiture of all sums paid by the Schmidts and avoidance of the option on default of payments and for payment of all legal fees by the Schmidts if Christensen were to find it necessary to employ counsel to regain possession of the premises. Finally, it is stated that it was fully understood and agreed that upon failure of any part of the agreement or option, Christensen would not be re-

quired to go into court and foreclose as under a land contract or mortgage. This agreement had not been recorded prior to the date of commencement of the bankruptcy proceedings. The chattel mortgage on the restaurant equipment owned by the Schmidts, executed as provided in the agreement, is dated December 16, 1954, and was duly filed on December 17, 1954.

Christensen credited the amount of $42,000, which he agreed to advance for purposes of purchase of the site and construction of the restaurant, to the account of the Schmidts under an entry on December 16, 1954, entitled "New Option." This amount was not placed in escrow or in any other special account.

At the date of the bankruptcy of the partnership, December 7, 1955, there was an unexpended balance of approximately $5,625.81 to the credit of the partnership. As of September 24, 1957, after all subsequent interest, taxes, and insurance debit charges, the amount due Christensen was less than $42,000; to wit: $40,696.67. Payments by the Schmidts on account included the $500 initial payment; $2,250, weekly installment payments of $125 each; $830.14, excess proceeds of a mortgage; and one rental payment of $375. Additionally, the Schmidts paid directly to contractors and materialmen the sum of $11,000, the proceeds of a loan they obtained from the F. W. Boelter Company.

The Schmidts and Christensen acted in furtherance of a common objective— the acquisition and improvement of the premises at 1216 Douglas Avenue by the construction and equipment of a restaurant building thereon. Christensen's purpose was the improvement of the acquired premises—the creation of a valuable business property—which he had promised to sell to the Schmidts and which he would permit the Schmidts to use until sale on terms resembling a lease. The Schmidts acted to construct the improvement for the purpose of operating a restaurant on the premises. The intention of the parties as to the ultimate purpose which the improved property would serve them respectively does not negate the fact that, at the time the improvements were contracted for, they were acting in the immediate common enterprise, the construction of the new building.

In the dealings with the contractors and other creditors, Christensen refused to make payments, notwithstanding work approval by the Schmidts and the existence of a credit balance in favor of the Schmidts. Further, Christensen issued a check in payment of a bill for equipment in the amount of $22,451 to the F. W. Boelter Company without the consent of the Schmidts on December 28, 1954, at a time when it was apparent that the entire financing would fail upon such payment. The equipment was sold and assigned directly to Christensen by duly filed bill of sale dated January 31, 1955. Further, Christensen charged the account of the Schmidts with insurance and interest payments, including a debit for a 2 per cent commission on a total loan of $46,000 which was never made available to the Schmidts. Christensen also negotiated with some of the contractors respecting reduction of the payments due them.

Christensen knew that he was the legal owner of the premises and that he would retain legal title to the lot and improvements until full payment or arrangement for mortgages was made. Christensen further knew that the Schmidts were acting to make improvements on these premises; in fact, he took an active role in the acquisition of the site and construction of the improvement.

The Schmidts knew, or should have known, that Christensen was the legal owner of the premises, and that Christensen would remain the owner of the improvements they were acting to have made on said premises until they had completed performance under the agreement of the parties.

The Schmidts further knew that Christensen consented by direction and acquiescence to their acting in furtherance of the enterprise, that he exercised control over their activities by approval and

direct participation, and that he controlled the financial aspects of their enterprise. With this knowledge, the Schmidts continued to. act in furtherance of the project.

The determination of any agency relationship between Christensen and the Schmidts is not predicated on the statements of the Schmidts to third parties. Cf. Gunsten v. Gordon, 160 Wis. 481, 152 N.W. 187 (1915), and Stevens v. Montfort State Bank, 183 Wis. 621, 198 N.W. 600 (1924). The creation of the agency relationship in the instant case is based on the mutual consent of the parties that the agent may act on the principal's account. Restatement, Second, Agency § 15. Georgeson v. Nielsen, 214 Wis. 191, 196, 252 N.W. 576 (1934); Sevey v. Jones, 235 Wis. 109, 111, 112, 292 N.W. 436 (1940); and Kennedy-Ingalls Corporation v. Meissner, 11 Wis.2d 371, 379, 105 N.W.2d 748 (1960). Restatement, Second, Agency § 15, Manifestation of Consent (1958), is followed by this comment:

"d. *Undisclosed principals.* A person who causes another to act in his affairs but without the other's knowledge that he is so acting may be subject to the duties and liabilities of a principal although there have been no manifestations between the parties, as where an agent of an undisclosed principal, operating a business for the principal, employs persons to act in the business. Such persons have all the rights of employees with respect to the owner of the business and are subject to some but not all of the duties of an agent to his principal. * * *"

The manifestation of consent necessary to create the agency relationship is defined in the Restatement as including conduct "from which, in light of the circumstances, it is reasonable for another to infer consent." Restatement, Second, Agency § 7, Authority, comment b—Manifestation of consent (1958). The manifestation may be made by words or other conduct, including acquiescence. Comment c—Express and implied authority.

From the facts as found by the referee, it clearly appears that Christensen consented that the Schmidts were to act in the construction of the improvement of his property and that the Schmidts so consented to act. Christensen's denial of an agency, similar to the denial of agency by the principal in Bourdo v. Preston, 259 Wis. 97, 47 N.W.2d 439 (1951), does not affect the agency relationship created by the conduct of the parties in this case.

The Schmidts, as agents of Christensen, agreed with the contractors that they would pay for the improvements. Christensen, as partially disclosed and as undisclosed principal in this enterprise, is bound by the express promises of his agents. Bourdo v. Preston, supra. Christensen's interest in the proceeds of the sale of the realty is subject to the contractors' claims for liens in issue on these petitions for review.

The referee's conclusion as to the validity and priority of the liens based on express promises and on estoppel cannot stand, since in all cases, but that of the Tarwid claim for lien, the promises and representations were made after commencement of the work or upon completion thereof. The holding of Fraser Lumber & Manufacturing Co. v. Laeyendecker, 243 Wis. 25, 9 N.W.2d 97 (1943), bars enforcement of a statutory lien in respect to work performed prior to the making of an express promise. By analogy, this rule bars enforcement of statutory liens in respect to work performed prior to the making of representations giving rise to detrimental reliance which furnishes the basis for the estoppel. It cannot be determined from this record what, if any, work was performed by Zold, Lonergan, and Durand Avenue Lumber Company subsequent to promises or representations to them by Christensen which would give rise to enforcement of part of the lien on those grounds.

The order of the referee is affirmed insofar as it holds valid and prior the

claims for liens of Mike Zold, Richard Tarwid, David J. Lonergan, and Durand Avenue Lumber Company for the reasons stated in the foregoing decision.

The order of the referee is hereby reversed insofar as it determines that the Surendonk claim for lien was not valid and not prior to the interest of L. C. Christensen.

The cross-petition of Mike Zold for interest is hereby denied on the ground that this matter was not raised in the proceedings before the referee.